UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVE COLEMAN,<br>Plaintiff,<br>v.<br>TRISTAN SHECKLES, *et al.*,<br>Defendants. | Case No. 3:23-cv-00606-ART-CLB<br>ORDER |

Plaintiff Steve Coleman sued Defendants Marc LaFleur, Mikka Etcheberry, Cody Parker, and Tristan Sheckles alleging that he was exposed to toxic fumes in his cell while he was incarcerated at Lovelock Correctional Center ("LCC"). (ECF No. 4.) Before the Court is Magistrate Judge Carla Baldwin's Report and Recommendations (R&R) recommending that Defendants' motion for summary judgment be granted (ECF No. 43), and that Coleman's motion for summary judgment be denied. (ECF No. 53.)

For the reasons set forth below, the Court adopts Judge Baldwin's R&R, granting Defendants' motion for summary judgment and denying Coleman's countermotion for summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

The Court adopts the following facts from the R&R. On December 22, 2022, Coleman was transferred to a cell that he alleges contained toxic fumes. (ECF No. 60 at 2.) Around January 2023, he told Officer Etcheberry that he was feeling ill from the fumes in his cell, but no action was taken. (*Id.*) Coleman alleges that he suffered severe dizziness, difficulty breathing, severe coughing, problems remaining conscious while in the cell, and pain in his lungs. (*Id.*) When Coleman again told Etcheberry about the fumes in February 2023, Etcheberry sent him to see LaFleur, the unit caseworker. (*Id.*) LaFleur, however, told Coleman that there

was nothing he could do about the problem. (*Id.*) On March 30, Coleman again told Etcheberry that he felt ill because of the fumes. (*Id.*) Etcheberry again told Coleman there was nothing he could do, and sent Coleman to LaFleur, who also, again, told Coleman he could do nothing about the issue. (*Id.*) That same day, Coleman then moved his property out of the cell and "refused to house," meaning he refused to continue living in his cell. (*Id.*)

While Etcheberry and LaFleur do not directly dispute that Coleman spoke to them on more than one occasion, their responses to Coleman's requests for admissions indicate they spoke to Coleman on fewer occasions than he alleges. (*Id.*) LaFleur specifically states that he only spoke to Coleman one time between January and March 2023. (*Id.*) Etcheberry was not asked how many times he spoke to Coleman, but his responses only note speaking to Coleman on March 30, when he refused to house. (*Id.*)

When Coleman refused to house, Etcheberry called Sheckles, a search and escort officer, who spoke with Coleman. (*Id.* at 2–3.) Coleman stated that he could not remain his cell because the fumes were making him ill, and explained that he had tried to switch his cell, but was denied. (*Id.* at 3.) Sheckles then escorted Coleman to shift command to speak with Officer Parker. (*Id.*) Parker, however, has no recollection of interacting with Coleman on March 30. (*Id.*) According to Coleman, Parker directed Sheckles to take Coleman to administrative segregation until they could "figure out what to do with him." (*Id.*) No one disputes that Coleman was issued a formal notice of charges and placed in administrative segregation on March 30, 2023. (*Id.*)

The next day, Coleman submitted a kite to medical stating that he had been housed in a toxic environment and needed to see a doctor. (*Id.*) Two weeks later, Coleman submitted another kite, noting that he had not received a response to his request to see a doctor. (*Id.*) On May 4, Coleman was seen by medical and was given something to help his congestion and two cough drops for his cough.

(*Id.*) There is no evidence that Coleman sought any further treatment after May 4. (*Id.*) Additionally, those two kites were the only kites that Coleman sent to medical regarding his concern over allegedly being exposed to toxic fumes. (*Id.*) During the three-month period that Coleman was housed in the allegedly toxic cell, however, he submitted at least eight kites to medical about other concerns. (*Id.*)

On November 29, 2023, Coleman filed this lawsuit. (ECF No. 1-2.) The court screened Coleman's complaint and allowed him to proceed with two claims: (1) deliberate indifference to serious medical needs against all Defendants and (2) deliberate indifference to an unconstitutional condition of confinement against LaFleur and Etcheberry. (ECF No. 3.) Defendants subsequently moved for summary judgment, arguing that Coleman cannot establish that they: (1) acted with deliberate indifference towards his medical needs; (2) created an unsafe prison condition for him; (3) had any causal connection between the alleged Eighth Amendment violation pertaining to claims arising prior to March 30, 2023; and (4) are not entitled to qualified immunity, as he will not be able to win on the merits or establish any case law putting Defendants on clear notice that their actions violated the Eighth Amendment. (ECF No. 43.) Coleman also moved for summary judgment, arguing that Defendants are not entitled to summary judgment.[1] (ECF No. 53.) Judge Baldwin concluded that because Defendants (1) were not deliberately indifferent to Coleman's medical needs, and (2) did not deliberately create a harsh prison condition, summary judgment should be granted for Defendants. (ECF No. 60.)

[1] Coleman's summary judgment motion essentially reiterates the arguments he makes in his opposition to Defendants' summary judgment motion and does not argue that he is entitled to summary judgment. (ECF No. 53.)

## II. LEGAL STANDARD

### A. Review of Reports and Recommendations

Under the Federal Magistrates Act, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Coleman objected to the R&R. (ECF No. 61.) Therefore, the Court reviews the R&R *de novo* for issues Coleman objected to.

### B. Motion for Summary Judgment

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248.

In considering a motion for summary judgment, "all reasonable inferences are drawn in the light most favorable to the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). However, if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

## II. ANALYSIS

### A. Serious Medical Need

Defendants argue that the evidence demonstrates that Coleman did not suffer from a serious medical need. (ECF No. 43 at 8–13.) Judge Baldwin recommends that the Court grant summary judgment to Defendants on Coleman's deliberate indifference to serious medical needs claim based on the lack of objective evidence that he suffered from a serious medical need. (ECF No. 60 at 6–8.) Coleman did not object to this recommendation and the Court finds that Judge Baldwin did not clearly err. (*See* ECF No. 61.)

To maintain a claim under the Eighth Amendment for deliberate indifference to serious medical needs, a plaintiff must show: (1) a "serious medical need" by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain; and (2) that the defendant's response to the need was deliberately indifferent, which can be demonstrated by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The first element is an objective standard requiring the plaintiff to show that the deprivation was serious enough to amount to cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Ninth Circuit has identified three situations which indicate that a medical need is serious: (1) "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of a medical condition that significantly affects an individual's daily activities;" or (3) "the existence of chronic and substantial pain." *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

"A prison official is deliberately indifferent under the subjective element of the test only if the official knows of and disregards an excessive risk to inmate health and safety." *Colwell*, 763 F.3d at 1066 (citations and internal quotations omitted). Delay of, or interference with, medical treatment can amount to deliberate indifference. *Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745–46; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Defendants argue that the evidence shows Coleman did not suffer from a serious medical need for the following reasons: (1) Coleman never submitted a kite to medical about being exposed to toxic fumes, despite being submitting eight kites for other issues (ECF No. 45-1 at 44–48, 50–52); (2) Sheckles states that Coleman did not appear to be in medical distress on March 30, 2023 (ECF No. 43-8 at 6); (3) LaFleur states that Coleman declined to go to sick call when asked on March 30 (ECF No. 43-5 at 8); (4) Coleman's medical records do not reflect a serious medical need (ECF No. 45-2 at 14); and (5) Coleman did not seek additional treatment after being seen on May 4, 2023. (*See* ECF No. 45-1.) Such evidence is sufficient to establish that Coleman did not suffer from a serious medical need.

In response, Coleman fails to demonstrate a genuine dispute of material fact. His only evidence consists of his own statement that he "suffered from severe dizziness, difficulty breathing, severe coughing, problems remaining conscious while in the cell, and pain in [his] lungs." (ECF No. 59 at 3, 5–6.) This subjective evidence, however, does not satisfy the objective standard for demonstrating a serious medical need, and amounts to nothing "more than the mere existence of a scintilla of evidence," which cannot defeat a properly supported motion for summary judgment. *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th

Cir.2010) (citing *Anderson,* 477 U.S. at 252).

The Court accordingly accepts and adopts Judge Baldwin's recommendations as to the deliberate indifference to serious medical needs claim. Defendants' motion for summary judgment on this claim is granted, and Coleman's motion for summary judgment is denied.

**B. Conditions of Confinement**

Judge Baldwin recommends granting summary judgment to Defendants' on the conditions of confinement claim because Coleman's evidence demonstrates that he knew that the toxic fumes in his cell were related to his cellmate smoking spice, a fact that he hid from Etcheberry and LaFleur. (ECF No. 60 at 9–11.) Coleman objects, claiming that he did not admit that his cellmate was smoking spice in his cell. (ECF No. 61 at 3–6.)

To establish deliberate indifference under the Eighth Amendment, a prisoner must show that a prison official "(1) exposed [the prisoner] to a substantial risk of serious harm; and (2) was deliberately indifferent to [the prisoner's] constitutional rights." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016).

First, whether a substantial risk of serious harm existed is an objective inquiry, and the Court "look[s] to whether the risk is not one that today's society chooses to tolerate." *Id.* (citation omitted).

To satisfy the second element, which is subjective, a plaintiff must prove that the prison official knew of or and disregarded "an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. This means that the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* However, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Coleman first argues that the evidence cited by Judge Baldwin does not support that he knew and did not tell Defendants that his cellmate was smoking spice. (ECF No. 61 at 3–4.) Coleman's own affidavit, dated September 26, 2024, recounts a conversation he had with Etcheberry, in which he complained to Etcheberry about his failure to act after Coleman reported the fumes. (ECF No. 49 at 84–86.) Etcheberry said to Coleman, "Maybe if you would have told us that your cellmate was causing the fumes then maybe we would have done something." (*Id.* at 86.) In response, Coleman said, "You know I couldn't do that I have to co-exist out here, I don't need that kind of jacket." (*Id.*) Such conversation tends to prove that Coleman knew that his cellmate was causing the fumes, but that he did not report the cause of the issue to Etcheberry.

Other evidence demonstrates that Coleman specifically knew that his cellmate was smoking spice. Etcheberry's response, executed on March 17, 2025, to Coleman's interrogatory states that Coleman's "cell mate was known to smoke spice." (ECF No. 43-4 at 4.) Additionally, Coleman states in his reply brief that spice was commonly used by inmates at LCC in 2023. (ECF No. 59 at 8–9.) Taken together, this evidence shows that Coleman knew the cause of the toxic fumes, but did not inform officials because he did not want to cause problems with other inmates.

Coleman also argues that prison officials should still have protected him from the toxic fumes, even if he did not tell them the cause of the fumes. (ECF No. 61 at 5.) However, Coleman did not raise failure to protect in his complaint and cannot raise a new claim in an objection to summary judgment. Additionally, Coleman argues that it was Etcheberry's responsibility to investigate the toxic fumes, given that Etcheberry had suspicion of Coleman's cellmate being a user of spice. (*Id.*) However, the evidence that Coleman cites concerns March 30, 2023, and there is no evidence that Etcheberry had any indication prior that Coleman's cellmate smoked spice. (*Id.* (citing ECF No. 53 at 50, 56).) Coleman also does not

include any evidence that LaFleur knew about his cellmate smoking spice.

The Court therefore agrees with the R&R and finds that Coleman has not demonstrated that prison officials were deliberately indifferent to his health and safety. Defendants' motion for summary judgment on this claim is thus granted, and Coleman's motion for summary judgment is denied.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that the report and recommendation (ECF No. 60) is ADOPTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF No. 43) is GRANTED.

IT IS FURTHER ORDERED that Coleman's motion for summary judgment (ECF No. 53) is DENIED.

IT IS FURTHER KINDLY ORDERED that the Clerk enter judgment in Defendants' favor and close the case.

Dated this 24th day of July 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE